215imcgMS

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   In the Matter of the
3  Extradition of

4        RORY McGRATH,                          21 Mag. 5058(PED)
                                       Initial Appearance/Bail Application
5  Defendant.
   ------------------------------x
6                                              White Plains, N.Y.
                                               May 14, 2021
7
   Before:
8
                     THE HONORABLE PAUL E. DAVISON,
9
                                              Magistrate Judge
10
                           APPEARANCES
11
   AUDREY STRAUSS
12      United States Attorney for the
        Southern District of New York
13 T. JOSIAH PERTZ
        Assistant United States Attorney
14

15 BENJAMIN D. GOLD
        Attorney for Defendant
16

17 Also Present:  LEONTHE BARRIOS
                  Pretrial Services Officer
18

19

20

21

22

23

24

25 Digital recording.

215imcgMS

1              THE COURT:  All right, Brigid.  Let's call the case.

2              THE DEPUTY CLERK:  Good afternoon.

3              This proceeding is being conducted by video and

4     telephone.

5              This is the matter of the United States versus Rory

6     McGrath, Case Number 21 Mag 5068.

7              Starting with the attorney --

8              THE COURT:  For the record, it's actually not a

9     criminal prosecution, and that correct caption, I suppose,

10    would be "In the matter of the extradition of Rory McGrath."

11             THE DEPUTY CLERK:  Okay.  In the Matter of the

12    Extradition of Rory McGrath, Case Number 21 Mag 5068.

13             Starting with the attorney for the government, can you

14    please note your appearance for the record.

15             MR. PERTZ:  Josiah Pertz for the government.

16    Good afternoon, your Honor.

17             THE COURT:  Good afternoon, Mr. Pertz.

18             MR. GOLD:  And good afternoon, your Honor.

19    For Mr. McGrath, Ben Gold from the Federal Defenders.

20             THE COURT:  Good afternoon, Mr. Gold.

21             All right.  Mr. McGrath, can you hear me?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Mr. McGrath, some preliminaries.

24             We are still in the midst of the COVID pandemic.  And

25    as a result, the Court is conducting many proceedings remotely.

215imcgMS

1   You and I and the attorneys are connected on a video link on

2   the Teams Platform, and the audio component of this conference

3   is on the AT&T conference line which is open to the public on

4   a -- and the press on a listen-only basis.

5          Now, Mr. McGrath, under normal circumstances, we'd all

6   be together in my courtroom.  But to ensure everyone's safety

7   and to avoid the possible spread of the COVID-19 virus, we are

8   proceeding remotely.  And I want to make sure that's acceptable

9   to you.

10          I have before me a written consent form signifying

11   your consent to proceed remotely today.  And it looks like

12   Mr. Gold has signed that on your behalf.

13          Did Mr. Gold go over that consent with you,

14   Mr. McGrath?

15          THE DEFENDANT:  Yes, he did, sir.

16          THE COURT:  And you authorized him to sign the written

17   consent on your behalf?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And it's acceptable to you to proceed this

20   way?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Very good.  All right.  Then, the written

23   consent is accepted, and we will proceed remotely with this

24   presentment.

25          Mr. McGrath, this is not a trial.  We're here for an

1    initial appearance during which it is my job to make sure you

2    understand why you've been arrested, to schedule further

3    proceedings, to advise you of your rights, and to consider

4    whether bail should be set.

5          You have an absolute right to remain silent at this

6    and every stage of the proceeding.  Any statement you do make

7    may be used against you.  You have this right to remain silent,

8    even if you've already made statements to the police, and you

9    are not required to answer any questions that law enforcement

10   officers ask you from this moment on.

11         I recommend that you consult with Mr. Gold as

12   necessary before you answer any questions that may be put to

13   you, and that includes questions I will ask you today.

14         Do you understand that, sir?

15         THE DEFENDANT:  Yes.

16         THE COURT:  All right.  Ms. Altimari, would you place

17   Mr. McGrath under oath or affirmation.

18         (Defendant RORY McGRATH sworn)

19         THE COURT:  Mr. McGrath, you're now under oath.  That

20   means if you knowingly make a false statement during this

21   proceeding, you could be prosecuted for perjury.  You could

22   face up to five years in prison and a $250,000 fine, if

23   convicted for that.

24         Do you understand?

25         THE DEFENDANT:  Yes.

215imcgMS

1          THE COURT:  You should also understand that --

2          Withdrawn.

3          For the record, what's your full name?

4          THE DEFENDANT:  Rory Patrick McGrath.

5          THE COURT:  How old are you?

6          THE DEFENDANT:  Sixty-two.

7          THE COURT:  Do you have any difficulty reading,

8    writing, speaking or understanding English?

9          THE DEFENDANT:  Reading or writing, no, but my hearing

10   is impaired.

11         THE COURT:  Your hearing is impaired.

12         THE DEFENDANT:  Slightly.

13         THE COURT:  Are you able to hear me okay?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And you understand spoken English.  It's

16   just a hearing problem.  Is that what you're telling me?

17         THE DEFENDANT:  Could you repeat that?

18         THE COURT:  You understand spoken English.  You just

19   have trouble hearing.  Is that right?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Okay.  How far did you go in school?

22         THE DEFENDANT:  Till about 16.

23         THE COURT:  All right.  Sir, have you ever been

24   hospitalized or treated for narcotic or alcohol addiction?

25         THE DEFENDANT:  No.

1              THE COURT:  Within the past 24 hours, have you used or

2     taken any drugs, marijuana, alcohol, medication or pills of any

3     kind?

4              THE DEFENDANT:  I had two beers for lunch yesterday.

5              THE COURT:  All right.  Anything about the effects of

6     the beers that you had for lunch yesterday that is interfering

7     with your ability to understand what's going on here this

8     afternoon?

9              THE DEFENDANT:  No.

10             THE COURT:  Are you feeling clear in your head this

11    afternoon, sir?

12             THE DEFENDANT:  Yes, somewhat.

13             THE COURT:  Are you feeling impaired in any way?

14             THE DEFENDANT:  Impaired?  No.

15             THE COURT:  You said you're somewhat clear in your

16    head.  Are you experiencing any kind of mental problem?

17             THE DEFENDANT:  No, sir.  I'm somewhat clear.  But I

18    mean, I didn't exactly expect it.

19             THE COURT:  You're surprised to be arrested.

20             THE DEFENDANT:  Yes.

21             THE COURT:  Okay.  Well, that's normal in the

22    circumstances.

23             All right.  Mr. McGrath, you have a right to be

24    represented by a lawyer at this and every stage of these

25    proceedings, including questioning, any lineup and at all court

1    proceedings.  And you have the right, once again, to consult

2    your attorney before you answer any questions.

3         Do you understand?

4         THE DEFENDANT:  Yes.

5         THE COURT:  Mr. Gold, I have this financial affidavit.

6    I have to say that it gives me grave concern about whether this

7    defendant, or whether this respondent, as the case may be, is

8    eligible for court-appointed counsel.

9         Do you want to elaborate on that financial affidavit

10   in any way?

11        MR. GOLD:  Yes, your Honor.

12        Mr. McGrath and I actually discussed this.  And if

13   necessary, he, of course, will try to avail himself of an

14   attorney.  Part of the issue was, he just had no idea how to do

15   that from the basement of the courthouse earlier today.

16        That said, while he does have a lot of assets, they're

17   not exactly liquid.  They're mostly in properties.  He's a

18   co-owner of an LLC, but the value there --

19        THE COURT:  Who's the co-owner?

20        MR. GOLD:  His wife.  It's him and his wife.  And it's

21   not exactly clear to me.  His children might be co-owners,

22   also.  That at least was the plan, but I don't know if that's

23   been executed yet.

24        But he's in -- if he has a 50 percent value of that,

25   that's not cold hard cash.  That's equity in a building, a

1    commercial building.  That would not be easy to sell today or

2    even tomorrow.

3          Similarly, with his home, while he has roughly

4    $200,000 in equity in that home, that's not cash.  The family

5    does have some money in a savings account, and he does have

6    money in an annuity.

7          I would just ask your Honor not to necessarily

8    consider the annuity, because that's his life's savings.  This

9    man no longer works.  And that's his retirement.  So he's

10   effectively on a fixed income, so . . .

11         THE COURT:  Does this commercial property generate any

12   income?

13         MR. GOLD:  It does generate some rental income, but

14   it's not fully rented.  So it's not in a great place right now.

15         Mr. McGrath's wife handles the books, so I would have

16   to have further discussions with her to know exactly the

17   situation.

18         At the very least, I ask that I be appointed

19   provisionally for today and up until he's able to retain an

20   attorney.  But given the amount of expenses they have and the

21   (unintelligible) and that their reliance on income of the

22   renters to -- for properties that are not fully rented, I'd ask

23   to be appointed, nonetheless.

24         (Pause)

25         MR. GOLD:  But I guess I will note just for today's

1    purposes, he wouldn't have an attorney, because --

2              THE COURT:  Well, I certainly am going to appoint

3    Federal Defenders for purposes of today's proceedings.  But you

4    know, I understand that the assets are not all liquid, but I'm

5    told that there's approximately $40,000 in cash assets.  And

6    you know, it looks to me like there's probably a million

7    dollars in equity here between these various assets, even

8    taking into account the debt.  And you know, I think I have

9    some responsibility to the public fisk.  And consequently --

10             Well, let me not get ahead of myself.

11             Mr. McGrath, you have the right to an attorney of your

12   own choosing.  If the Court is persuaded that you are unable to

13   afford an attorney, the Court would, under those circumstances,

14   appoint an attorney to represent you without cost to you.

15             Mr. Gold has provided me with a copy of a written

16   financial affidavit which he appears to have signed on your

17   behalf.

18             Did you go over these financial questions with

19   Mr. Gold?

20             THE DEFENDANT:  Yes.

21             THE COURT:  I have to get you to certify, under

22   penalty of perjury, that the affidavit is true and correct, so

23   I have to ask you the questions.

24             Do you have a job?  The box is checked "No."  Is that

25   correct?

1                    THE DEFENDANT:  Do I have a job?

2                    THE COURT:  Yes.

3                    THE DEFENDANT:  No.

4                    THE COURT:  Okay.  The next question asks about

5      property.  And there's a series of lines for entries.

6                    First for home, it says you own a home that's worth

7      approximately $520,000, but there's a $300,000 outstanding

8      mortgage.  Is that correct?

9                    THE DEFENDANT:  That's correct.

10                   THE COURT:  Next question asks about vehicles.  And

11     here, it indicates that you own vehicles valued at $48,500, but

12     they are subject to approximately $20,000 in financing.  Is

13     that correct?

14                   THE DEFENDANT:  That's correct.

15                   THE COURT:  The next entry indicates that you own

16     stocks and bonds valued at approximately $300,000.  And a note

17     explains that that's a retirement annuity through your union,

18     again valued at approximately $300,000.  Is that correct?

19                   THE DEFENDANT:  I just have an annuity.  I don't know

20     what it's invested in exactly.

21                   THE COURT:  All right.

22                   THE DEFENDANT:  But it is approximately 300,000.

23                   THE COURT:  Okay.  And as to other property, it

24     indicates that you are a co-owner of an LLC that owns two

25     commercial properties which are worth about $750,000, but

1    there's a $150,000 loan against them.  Is that correct?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Next question asks about cash in bank

4    accounts.

5              "Do you have any cash or money in savings or checking

6    accounts?"

7              You say, "Yes."

8              And then it indicates the total approximate amount

9    after monthly expenses is $40,000.

10             Is that correct?

11             THE DEFENDANT:  I'm not totally sure, because my wife

12   does all the bank transactions.  But it sounds about right.

13   I'm only estimating here.

14             THE COURT:  All right.

15             MR. GOLD:  And, your Honor, it might be helpful for me

16   to interject here a little bit.

17             I actually met with Mr. McGrath.  Due to, well, my

18   understanding of the rule, but the room where I met with him, I

19   was not allowed to call his wife simultaneously with him there.

20             THE COURT:  Right.

21             MR. GOLD:  So I called her and got some of these

22   details from her.  But he was just very nervous, and he didn't

23   want to inadvertently lie, because he does not know the exact

24   amounts.

25             THE COURT:  So some of this information comes from his

1   wife?

2           MR. GOLD:  Correct.

3           I believe specifically the next part you're going to

4   read, he, of course, knows this, and I discussed that with him.

5   But for instance, the amount of groceries?  He had no idea how

6   much the family spends on groceries.

7           THE COURT:  You know what?  I'm not going to ask him

8   to swear to an affidavit that is based on information provided

9   by somebody else.

10          I think that I will appoint Federal Defenders for

11  purposes of today and any ancillary bail proceedings.  And I

12  will direct, Mr. Gold, if Mr. McGrath decides to seek

13  court-appointed counsel on an ongoing basis with respect to any

14  extradition hearing, I will direct counsel to make an updated

15  application for court-appointed counsel, based on facts that

16  are actually within his ken.

17          But, Mr. McGrath, I'm going to appoint Mr. Gold to

18  represent you for purposes of today's proceedings and any bail

19  hearing that we may have to have.  But I frankly am inclined to

20  believe that you have too many assets to qualify for

21  court-appointed counsel.  And I will tell you now that, based

22  on the information before me, I would probably require you to

23  deposit some amount of cash, probably in the range of 10 to

24  $20,000, with the court to offset the cost of being represented

25  by Federal Defenders.  So you may as well know that now.  And

1     it may affect your decision as to whether to try to engage

2     private counsel.

3            But, Mr. Gold, I'm appointing Federal Defenders for

4     purposes of today's proceedings and any related bail

5     proceedings.  And I appreciate, as always, your availability.

6            Mr. McGrath, are you a United States citizen?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Are you a citizen of any other country?

9            THE DEFENDANT:  Yes.

10           THE COURT:  And what country is that?

11           THE DEFENDANT:  Ireland.

12           THE COURT:  All right.  I am informed that Ireland is

13    a voluntary notification jurisdiction.  Therefore, Mr. McGrath,

14    you are entitled to have the United States Government notify

15    the Irish Consulate of your arrest if you wish.  Your consul

16    may be able to assist you with this matter.  Your consul may

17    visit you in detention.  They may offer to notify your family.

18    They may assist you in obtaining counsel.  You may accept or

19    reject such offers of help as you choose.  You may ask the

20    United States Government to notify your consulate now, or you

21    may ask them at any time in the future while this case is

22    ongoing.

23           Do you wish to have the United States Government

24    notify the Irish Consulate of your arrest?

25           THE DEFENDANT:  Yes.

1          THE COURT:  All right.  Mr. Pertz, the defendant -- or

2     the respondent, I should say, is requesting consular

3     notification, and I will direct that the government confirm,

4     within one week in writing, that that has occurred.

5          MR. PERTZ:  Very good.

6          THE COURT:  All right.  Now, Mr. McGrath, you have

7     been arrested on the basis of a complaint alleging that the

8     Government of the United Kingdom has submitted a formal

9     request, through diplomatic channels, for your extradition,

10    pursuant to a treaty dated 2003, now in force between the

11    United States and the United Kingdom.

12          According to the Government of the United Kingdom, you

13    are charged with two offenses which are alleged to have

14    occurred in 1980.  Both of the counts on which the United

15    Kingdom seeks your extradition relate to allegations that you,

16    with others, inflicted actual bodily harm upon one Ian Geoffrey

17    Moore at Aberfold Road -- or I should say Count One is Aberfold

18    Road, Garforth.  Count Two is at the Miners Arms Public House,

19    again in 1980.  Those are the charges on which the United

20    Kingdom seeks your extradition.

21          Mr. Gold, did you receive a copy of the extradition

22    complaint and its attachments?

23          MR. GOLD:  Yes, your Honor, I did.

24          THE COURT:  And have you reviewed the extradition

25    complaint with your client?

1          MR. GOLD:  Yes.  I read that to him.

2          And I was actually able to get him a copy of that, and

3     the accompanying paper work.  So he has a copy, as well.

4          THE COURT:  Great.

5          Does he waive the public reading?

6          MR. GOLD:  He waives the public reading.

7          I'll note that I discussed it with him.  I'm satisfied

8     that he understands the contents within it.

9          THE COURT:  All right.  Mr. McGrath, you have the

10    right to a public extradition hearing in this court.  And we

11    will schedule that hearing later in this proceeding.

12         I advise you that if you believe there are witnesses

13    whose evidence is material to your defense but you cannot pay

14    the fees of such witnesses, you have the right to request that

15    such witnesses be subpoenaed, and that the cost incurred by the

16    process, including the fees of the witnesses, be paid in the

17    same manner as in the case of witnesses subpoenaed by the

18    United States.

19         At the extradition hearing, it will be determined

20    whether you are charged with a crime or crimes for which there

21    is a treaty or convention for extradition between the United

22    States and the United Kingdom.

23         It will further be determined whether the warrant and

24    documents demanding your surrender are properly and legally

25    authenticated.

1              And finally, the hearing will determine whether the

2      commission of the crime alleged is established by probable

3      cause, such as would justify the commitment for a trial if the

4      offense had been committed in the United States.

5              Now, Mr. Pertz, for the record, when and where was

6      this defendant arrested?

7              MR. PERTZ:  The defendant was arrested today,

8      May 14th, 2021, at approximately 6:15 a.m., in Pearl River, New

9      York.

10             THE COURT:  All right.  He's being presented before me

11     at approximately 4:45 p.m. today, May 14th, 2021.

12             Now, Mr. Pertz, I received a letter from your office

13     indicating that the government seeks to hold Mr. McGrath

14     without bail?

15             MR. PERTZ:  That is correct.

16             THE COURT:  And, Mr. Gold, I received a responsive

17     letter from your office suggesting that I should release this

18     defendant.

19             I note that both parties have submitted letter briefs

20     citing numerous legal cases.

21             I note, as well, that this proceeding is not governed

22     by the Bail Reform Act, and there is no timetable for

23     consideration of bail.  In order to release Mr. McGrath, the

24     Court would have to find that there are special circumstances

25     that warrant releasing him, despite the presumption against

1   bail in an international extradition matter like this.

2           So, counsel, what I'm inclined to do is schedule a

3   bail hearing which will give both the parties an opportunity to

4   refine their arguments, give Mr. Gold an opportunity to

5   assemble whatever conditions he believes are appropriate, and

6   give the Court an opportunity to ponder the many legal

7   authorities that the parties have helpfully provided to the

8   Court.

9           The sticking point is the complications arising out of

10  getting Mr. McGrath back from detention for a further bail

11  hearing.

12          Can the marshal hear me?

13          THE MARSHAL:  Yes, your Honor.

14          THE COURT:  Where is Mr. McGrath going to go?

15          THE MARSHAL:  Valhalla.

16          THE COURT:  He'll be in Valhalla?

17          THE MARSHAL:  Yes.

18          THE COURT:  All right.  Counsel, I have availability

19  next Tuesday afternoon, but I don't know for sure whether the

20  authorities are going to be able to accommodate that.

21          Are counsel available next Tuesday afternoon for a

22  bail hearing?

23          MR. PERTZ:  Your Honor, the government is available at

24  the Court's convenience, of course.  We do have an arraignment

25  before Judge Krause at 3:00 p.m. on Tuesday.  But apart from

1    that, the afternoon will be clear.

2              THE COURT:  Mr. Gold?

3              MR. GOLD:  I am just trying to access my electronic

4    calendar, your Honor --

5              THE COURT:  Okay.  Take your time.

6              MR. GOLD:  -- to see if that works.

7              (Pause)

8              MR. GOLD:  Yes, I am available May 18th in the

9    afternoon.  Of course, I am available all day on the 18th.

10             THE COURT:  Brigid --

11             Well, let me ask another question.

12             Mr. Gold, is Mr. McGrath going to consent to a remote

13   appearance on the --

14             MR. GOLD:  Oh, you know, your Honor, I was hoping and

15   prepared to make a bail application today.  I am not requesting

16   an adjournment.  I know your Honor gets to make the decision,

17   though.  So I have not had this discussion with him.  My guess

18   is, he would consent to it if that's the quickest way to get it

19   done.  And my assumption is that that's the case.  But in all

20   honesty, I did not anticipate bail being tabled till next week,

21   so I did not have that discussion with him.

22             THE COURT:  All right.  Mr. McGrath, let's ask you.  I

23   am trying to schedule a bail hearing to consider whether I can

24   release you or not.  It might, in light of quarantine and so

25   forth, expedite that if you will consent to proceed remotely,

1  the same way we are today.  Would you consent to that?

2          THE DEFENDANT:  Oh, there's going to be no bail

3  hearing today?

4          THE COURT:  There's going to be no bail hearing today.

5          THE DEFENDANT:  Okay.

6          THE COURT:  Will you consent to do it remotely if we

7  can set that up for next Tuesday?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  Counsel will have to stay in

10  contact with Ms. Altimari, because we may have to push that

11  back, depending on the schedule.  But Ms. Altimari will work on

12  that and set the precise time.

13          Mr. Pertz, is there somebody else that could cover

14  that arraignment for you at three o'clock if need be?

15          MR. PERTZ:  Yes, your Honor.

16          THE COURT:  All right.  I think that probably is the

17  best idea.  All right.

18          MR. GOLD:  Your Honor, if I could just briefly -- and

19  I don't mean to litigate something that you want to litigate on

20  Tuesday.

21          But I just feel the need to make sure your Honor

22  understands that one of the many reasons that I believe

23  Mr. McGrath is worthy of release is his health condition.  He

24  is someone who suffers from field PD and asthma, in part due to

25  his volunteering at Ground Zero on September 11th.

1          He has received one COVID shot.  So that, of course,

2     protects him a little bit, but he's not fully immunized --

3     sorry -- he's not fully vaccinated.  And my concern is, the

4     whole purpose, or one of the purposes, of allowing pretrial

5     release in cases like this is to protect his health.  And my

6     fear is that him being incarcerated, where social distancing is

7     difficult, will imperil his health.  And so therefore, I would

8     ask that you, if he needed to be detained or -- sorry -- if we

9     are going to continue this hearing or do this during next week,

10    I'd ask you to consider a provisional release with an ankle

11    monitor.  I believe his family could get his passports to me

12    within 40 minutes.  So just in light of the health situation, I

13    wanted to ask that your Honor make some accommodation that

14    would not require him to spend the next few days in jail.

15          THE COURT:  Mr. Pertz, you want to respond to that?

16          MR. PERTZ:  Yes, your Honor.  And we are getting into

17    the contents here.

18          Health situations are brought up in the context of

19    detention on extradition complaints.  And the language I have

20    seen is that if there is a health emergency that could only be

21    treated while on bail, then Courts have considered that.  But

22    for other health conditions, where treatment would be possible

23    outside of the emergency context, health conditions, in

24    themselves, are not seen as a special circumstance.

25          This is new territory because of COVID, and the

1   vaccination situation is certainly something that must be taken

2   into account.  But as to whether or not it is an emergency that

3   can't be dealt with in Valhalla, I don't know that any Court

4   has made that ruling.

5          So the government would support the Court's scheduling

6   of a bail hearing next week.  But at least on health grounds,

7   we would argue that there just isn't grounds under existing

8   case law for release.

9          MR. GOLD:  If I could just very briefly, your Honor.

10         I believe the difference that COVID-19 presents is

11  that there is a health emergency, and that we're all being told

12  to social distance to protect ourselves, especially if we're

13  especially vulnerable like Mr. McGrath is.  So the ability to

14  prevent a serious illness is absolutely an emergency.  And

15  because of that, it's one of the most pressing special

16  circumstances present in this case.

17         (Pause)

18         THE COURT:  When did he get the shot?

19         MR. GOLD:  My understanding is -- I don't know the

20  answer to that.  I think he gets his second shot in roughly

21  seven to ten days.

22         Is that correct, Mr. McGrath?

23         THE DEFENDANT:  Yes.  The second one, I believe, is

24  the 25th of this month.

25         MR. GOLD:  So in 11 days, he gets --

215imcgMS

1          THE DEFENDANT:  Roughly one month between shots.

2          (Pause)

3          THE COURT:  Mr. Barrios, are you on the line, or

4    somebody from Pretrial?

5          MR. BARRIOS:  Yes, your Honor, I'm here.

6          THE COURT:  All right.  Brigid, we're going to take a

7    little recess, and I'm going to have the Pretrial Services

8    Officer call me.

9          THE DEPUTY CLERK:  Okay.  You want him to call you

10    outside of the conference call, then.

11          THE COURT:  Yes.  Is it easier to put him in a

12    breakout?

13          THE DEPUTY CLERK:  I can put the two of you in a

14    breakout room.

15          THE COURT:  Okay.  Let's do that.

16          THE DEPUTY CLERK:  Okay.  Give me one second.

17          (Pause)

18          THE DEPUTY CLERK:  Okay.  I've put you both in a

19    separate room, and I'm going to start the breakout session now.

20    Okay.

21          (Recess)

22                              -   -   -

23          THE COURT:  Mr. Gold, what kind of financial

24    conditions can be arranged here?

25          MR. GOLD:  Your Honor, I would -- Mr. McGrath and

1  Mrs. McGrath would be happy to post actual collateral.

2  Obviously, the logistics of doing that on a Friday night are

3  difficult.  But in terms of the particular type of bond that I

4  was going to recommend or suggest was a $100,000 bond, but they

5  could certainly go higher with actual collateral being called,

6  in being the equity of their home.  So by satisfaction -- a

7  judgment of satisfaction for their home equity, which is

8  roughly $300,000, for the equity in his annuity account.

9  Obviously, as you know from when we discussed his finances,

10 they're not very liquid, but they have assets.  And both

11 Mr. McGrath and his family are more than happy to post them as

12 collateral.

13        In terms of co-signers, my understanding is that his

14 wife, his two children who are 18 but younger, are both happy

15 to sign a bond, and there's at least two other people who I

16 believe are also -- have also already expressed interest.  I

17 don't think four people are necessary.  I think Mr. McGrath,

18 his wife and his children -- so three people in addition to

19 him -- are more than sufficient.  But he has plenty of people

20 who would be willing to sign.  And as you know, they're happy

21 to post the collateral, as well.

22        (Pause)

23        THE COURT:  Mr. Pertz, am I correct that the so-called

24 statutory maximum in the United Kingdom for this offense is

25 five years?

1          MR. PERTZ:  Correct.

2          THE COURT:  Mr. Pertz, you know, I said I was going to

3     defer this hearing.  But I must say that Mr. Gold makes a

4     pretty compelling case for why delay in this context would not

5     be prudent with regard to this defendant's health.

6          I have to say that, were this not an international

7     extradition proceeding, it would not take me long to find that

8     Mr. McGrath was an excellent candidate for release on modest

9     conditions.  I think that, under the circumstances, I am

10    inclined to release Mr. McGrath on relatively stringent release

11    conditions, including home incarceration, to be enforced by

12    electronic monitoring.

13         I want to give you -- I understand the legal

14    background.  I want to give you the opportunity to tell me

15    anything else that you think I ought to know before I rule on

16    this.

17         MR. PERTZ:  The government has nothing to add.

18         Thank you very much.

19         THE COURT:  All right.  Thank you, Mr. Pertz.

20         Look.  This is one of these difficult situations.  But

21    I do -- you know, on the one hand, Mr. McGrath has apparently

22    been a fugitive from justice for most of his adult life.  On

23    the other hand, I am told that he attended a wedding in the

24    United Kingdom during the intervening years, which suggests to

25    me that he did not view himself as a fugitive.

1          And there is no question that Mr. McGrath has put down

2    strong roots in the community.  He owns a home.  He had a

3    career.  And he has significant assets here which are not, as

4    Mr. Gold pointed out, particularly liquid.  And so it does not

5    strike me as it would be particularly easy for him to pull up

6    stakes.

7          Nor, frankly, do I view the five-year penalty that

8    could potentially be imposed in this case as giving rise to an

9    overwhelming risk of flight.  And then, of course, we have the

10   COVID pandemic.

11         And I am told by Mr. Gold that Mr. McGrath's

12   respiratory issues are linked to his service after -- during

13   cleanup at Ground Zero, which I think has to be entitled to

14   some consideration in this context.

15         So for all these reasons, I am going to order

16   Mr. McGrath released on a $1,000,000 personal recognizance

17   bond, which is to be secured by $250,000 in cash or property,

18   and co-signed by four financially responsible persons.

19         I will order Mr. McGrath to be released to a regime of

20   home incarceration at his home in Pearl River, which is to be

21   enforced by GPS monitoring.  Defendant will be permitted to

22   self-install the equipment.

23         Defendant is directed to surrender his passports and

24   any other travel documents to Pretrial Services by the close of

25   business on Monday.

1              Mr. Gold, you're going to have to get somebody else to

2       bring them over here.

3              I will restrict his travel to the Southern District of

4       New York, which should not pose a hardship, since I am imposing

5       home incarceration.

6              Mr. McGrath, do you have any firearms in the home?

7              THE DEFENDANT:  Excuse me, Judge?

8              THE COURT:  Do you have any firearms in your home?

9              THE DEFENDANT:  Firearms?  No.

10             THE COURT:  All right.  I will direct Mr. McGrath not

11      to possess a firearm, destructive device or other weapon while

12      he's at liberty on bail conditions.

13             I will restrict his -- I will direct him to refrain

14      from use or unlawful possession of any narcotic drug unless

15      prescribed by a licensed medical practitioner.

16             Mr. McGrath can be released today upon signing the

17      bond.

18             Pretrial Services will immediately implement or

19      provide him with the equipment to implement the home

20      incarceration, and shall immediately begin to monitor that

21      status.

22             The other conditions, the financial conditions, are to

23      be satisfied by two weeks from today, Mr. Gold?

24             MR. GOLD:  I think that sounds very doable.

25             Thank you.

1          THE COURT:  And that leaves the issue of a date for an

2     extradition hearing.  And I will hear counsel's views on that.

3          MR. PERTZ:  Judge, may I make one more request for a

4     condition before we get to scheduling?  And this was in

5     Pretrial's recommendation, and it builds on a condition that

6     the Court has mentioned.

7          We would request that not only would the defendant

8     surrender any travel documents, but also not apply for any new

9     documents.

10         THE COURT:  Absolutely.  I was remiss in not

11    addressing that.

12         Mr. McGrath, not only are you to surrender your

13    passports -- and I gather you have two passports?  Is that

14    correct?

15         THE DEFENDANT:  I don't know if they're both current,

16    but I do hold two passports.

17         THE COURT:  Well, all right.  Well, you're going to

18    surrender those to Pretrial Services.  And I'm going to direct

19    you not to apply for a replacement passport or any similar

20    travel document while you're at liberty on bail conditions.

21    This includes passport cards or any other documents that you

22    could travel on.

23         Do you understand?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  All right.  Mr. Pertz, we went off track.

1   I was inquiring about scheduling of an extradition hearing.

2             MR. PERTZ:  Yes.  Thank you.

3             The government would only request that it be allowed

4   to file (unintelligible) hearing papers two weeks before the

5   hearing.  That is the only request that we would have, other

6   than that the hearing be scheduled expeditiously in general.

7   But we would also be interested to hear the views of

8   Mr. McGrath's counsel as to how soon they would like to do

9   this.

10            THE COURT:  Well, it may or may not be Mr. Gold.  And

11   this is scheduling.  It could always be subject to change, but

12   for present purposes, I would be inclined to schedule it in 30

13   days.

14            Any objection to that from anybody?

15            MR. PERTZ:  None from the government.

16            Thank you.

17            MR. GOLD:  No objection here.

18            I do think if he's retaining an attorney, 30 days is

19   probably overly optimistic.  But I'm happy to --

20            THE COURT:  Well, I would certainly entertain an

21   application to put it off to accommodate counsel's schedule.

22   But why don't we schedule the hearing at 10:00 a.m. on Monday,

23   June 14th, at this time.  And the government's submissions

24   would therefore be due on May 31st.  All right?

25            All right.  So we will stand in recess.

1              Mr. McGrath, I'm taking a chance on you.  Don't blow

2      it.  You understand?

3              THE DEFENDANT:  Yes, your Honor.

4              Thank you.

5              THE COURT:  You know, this has been hanging over your

6      head all your life, and you need to get it behind you.  But

7      really, really bad things will happen to you and your family if

8      you violate the terms of this bond.  Do you understand?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  All right.  We'll stand in recess.

11             Defendant can be released after executing the

12     appropriate papers.  Whereupon, he shall go directly to

13     Pretrial Services for implementation of the conditions.

14             I will add a condition of Pretrial Services

15     supervision, if I didn't say that already.

16             And I should caution you, Mr. McGrath, Pretrial

17     Services acts as an arm of the Court.  If they tell you to do

18     something, it's the same as if I told to you do it.  You

19     understand?  You have to follow their instructions.

20             All right.  Very good.  We'll stand in recess.

21             Have a good weekend, everybody.

22             MR. GOLD:  Thank you so much.

23             MR. PERTZ:  Thank you.

24                             -   -   -

25