UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE EXTRADITION
OF RORY McGRATH

**CERTIFICATION AND ORDER**

21 MJ 5058 (PED)

**PAUL E. DAVISON, U.S.M.J.**:

The United States Government [the "Government"], acting at the request of the Government of the United Kingdom [the "United Kingdom"], seeks a certification that Rory McGrath ["McGrath"] is extraditable pursuant to applicable treaties. McGrath opposes extradition, arguing that the Government's request fails to conform to the treaties, and also asserting the record fails to establish probable cause. In addition, the Government seeks remand of McGrath, who has been at liberty on bail conditions since his arrest on May 14, 2021.

The Court conducted an extradition hearing in this matter on October 21, 2021. The parties have submitted extensive briefing, both before and after the hearing. For the reasons set forth, the Court **GRANTS** the Government's motion for certification that McGrath is extraditable. The Government's motion for remand is **DENIED**.

### I. BACKGROUND

**A. Procedural History**

On or about May 11, 2021, the Government filed, and the Honorable Judith C. McCarthy signed, a complaint in support of a warrant for the arrest of Rory McGrath. [Dkt. 2.] On May 14, 2021, McGrath was arrested in Pearl River, New York, and presented before the undersigned. After extensive argument, McGrath was released on bail conditions, including but not limited to a $1 million personal recognizance bond, secured by $250,000 cash or property and cosigned by four financially responsible persons; home incarceration; and GPS monitoring by Pretrial

Services.[1]  The Court set the matter down for an extradition hearing on June 14, 2021; the hearing was adjourned several times and ultimately conducted on October 21, 2021.

The parties submitted pre-hearing memoranda. [Dkts. 7, 23, 24.]  At the October 21 hearing, the following Exhibits were received without objection:

- Government Exhibit 1, comprised of a declaration of Tom Heineman, Attorney Advisor for the U. S. Department of State's Office of Law Enforcement and Intellegence, along with the applicable extradtion and various diplomatic notes exchanged regarding the extradition request; and

- Government Exhibit 2, comprised of documents submitted by the United Kingdom in support of the extradition request, certified by Julian Gibbs, Head of the Extradition Section for the Home Office and carrying the seal of the Home Office.

The Court heard argument and reserved decision.  The parties submitted post-hearing memoranda. [Dkt. 29, 32.]

**B. Allegations Against McGrath**

The United Kingdom seeks McGrath's extradition in connection with two counts of assault occasioning actual bodily harm in violation of Section 47 of the Offences Against the Person Act of 1861.  Each count is punishable in the United Kingdom by imprisonment for up to five years.  Both counts relate to March 28, 1980, incidents at Garforth, Leeds, England, in which the victim, police officer Ian Geoffrey Moore, was attacked while attempting to break up a dispute among a group of youths and again, shortly thereafter, while attempting to apprehend the combatants.  Moore sustained injuries, including a broken nose requiring surgery, as a result of the assaults.

---

[1] McGrath's home incarceration condition was subsequently relaxed, on consent, to afford McGrath time to maintain certain business property near his home. [Dkts. 15, 19.]

The factual basis for the United Kingdom's criminal charges against McGrath is simple. Among other things, the documents collected at Government Exhibit 2 show that: 1) a police officer who came to Moore's aid after the second assault and then chased two of Moore's assailants from the scene identified McGrath as one of the men he had pursued; 2) at a subsequent committal hearing, Moore himself identified McGrath as the youth who had punched him in the nose; 3) two of McGrath's co-defendants gave inculpatory statements which also implicated McGrath in the assaults; and 4) McGrath himself gave conflicting accounts but eventually acknowledged having been part of a group of young men who caroused in Garforth on the evening of the assaults.

McGrath's co-defendants were convicted of assault occasioning actual bodily harm and received custodial sentences. McGrath, however, fled the jurisdiction in violation of his bail conditions and ultimately relocated to the United States of America.

## II.  LEGAL STANDARDS

"In the United States, extradition is governed by the federal extradition statute." *Cheung v. United States*, 213 F.3d 82, 87 (2d Cir. 2000) (citing 18 U.S.C. §§ 3181-3196). That statute provides that a magistrate judge may issue a warrant for the arrest of someone whose extradition is sought, so that the person charged may be brought before the Court "to the end that the evidence of criminality may be heard and considered." 18 U.S.C. § 3184. If, on such hearing, a magistrate judge "deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention," the magistrate judge "shall certify the same" to the Secretary of State. *Id*. "The judicial officer's inquiry is confined to the following: whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence

3

marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof." *Cheung*, 213 F.3d at 88 (citing *Lo Duca v. United States*, 93 F.3d 1100, 1103-04 (2d Cir. 1996)).

"An extradition hearing is not the occasion for an adjudication of guilt or innocence." *Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981). "Instead, it is 'essentially a preliminary examination to determine whether a case is made out which will justify the holding of the accused and his surrender to the demanding nation.'" *Lo Duca*, 93 F.3d at 1104 (quoting *Ward v. Rutherford*, 921 F.2d 286, 287, 287 U.S. App. D.C. 246 (D.C. Cir. 1990)). "The judicial officer . . . 'thus performs an assignment in line with his or her accustomed task of determining if there is probable cause to hold a defendant to answer for the commission of an offense.'" *Lo Duca*, 93 F.3d at 1104 (quoting *Ward*, 921 F.2d at 287).

Neither the Federal Rules of Evidence nor the Federal Rules of Criminal Procedure are applicable in extradition proceedings. *See* Fed. R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101(d)(3). Instead, admissibility is governed by 18 U.S.C. § 3190, which provides:

> Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

Accordingly, hearsay evidence is admissible. *Melia*, 667 F.2d at 302.

### III. DISCUSSION

This Court has authority to conduct this extradition proceeding pursuant to 18 U.S.C. § 3184 and Local Criminal Rule 59.1(b).  This Court has jurisdiction over McGrath because he was located and arrested in Pearl River, New York, within the Southern District of New York. *See* 18 U.S.C. § 3184.  As hereinafter discussed, there is a valid treaty in full force and effect between the United States and the United Kingdom, and McGrath has raised no question regarding whether the assault charges at issue fall within the purview of the treaty.  Instead, McGrath asserts that the Government's exhibits were not authenticated in accordance with the applicable treaty, and that the evidence proffered by the United Kingdom does not establish probable cause.  The Court's analysis accordingly focuses on those issues.

**A. Proper Authentication Pursuant to Treaty**

The "extradition treaty" pursuant to which the United Kingdom seeks McGrath's extradition is a complex series of documents.[2]  A bilateral 2003 Treaty was amended in 2004, via the Instrument and Annex, to conform certain provisions of the 2003 Treaty to the U.S.- E.U. Extradition Agreement.  As relevant here, the Instrument and Annex incorporated

---

[2]The documents comprising the extradition treaty are formally described as follows: Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, U.S.-U.K., Mar. 31, 2003, S. TREATY DOC NO. 108-23 (2004) (the "2003 Treaty") and related Exchanges of Letters, as amended by the Instrument as contemplated by Article 3(2) of the Agreement on Extradition Between the United States of America and the European Union signed 25 June 2003, as to the application of the Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed 31March 2003, U.S.-U.K., Dec. 16, 2004, S. TREATY DOC. NO. 109-14 (2006) (the "Instrument"),with Annex (the "Annex") reflecting the integrated text of the operative provisions of the 2003Treaty and the Instrument.

Also relevant to the Court's analysis is the above-referenced Agreement on Extradition between the United States of America and the European Union ("EU"), signed on June 25, 2003 (the "U.S. - E.U. Extradition Agreement").

streamlined procedures for the authentication of documents in extradition proceedings. Thus, while the 2003 Treaty stated that documents proffered by the United Kingdom in support of an extradition request would be admissible if certified "by the principal diplomatic or principal consular officer of the United States resident in the United Kingdom[,]" the 2014 Instrument deems admissible documents that "bear the certificate or seal of the Ministry of Justice . . . of the Requesting State[.]" "Ministry of Justice" is further defined, for the United Kingdom, as "the Home Office."

Here, the documents comprising Exhibit 2 in support of McGrath's extradition are certified by Julian Gibbs, Head of the Extradition Section for the Home Office, and bear the Home Office's seal. Thus, the Exhibit is admissible under the standard set forth in the 2004 Instrument, but has arguably not been properly certified in accordance with the 2003 Treaty.[3]

Seizing on this distinction, McGrath argues that Mr. Gibbs' certification is inadequate because the 2004 Instrument is no longer in effect. McGrath points to language in Article 6(b) of the 2004 Instrument stating that "[i]n the event of termination of the [U.S. - E.U. Extradition Agreement], this Instrument shall be terminated and the 2003 Extradition Treaty shall be applied." McGrath reasons that, as a result of the United Kingdom's well-publicized withdrawal from the EU in early 2020 ("Brexit"), the United Kingdom is no longer a party to the U.S. - E.U. Extradition Agreement. Accordingly, McGrath's argument goes, the 2004 Instrument has been terminated and the Instrument's language reverting to the terms of the 2003 Extradition Treaty is triggered.

---

[3] The Court does not reach the Government's alternative contention that the Exhibit is admissible under 18 U.S.C. § 3190 because United Kingdom tribunals would accept similarly authenticated documents for similar purposes.

McGrath's argument fails because nothing in the 2004 Instrument suggests that the Instrument's validity is contingent on the United Kingdom's membership in the EU. *See Flynn v. Barr*, 2020 U.S. Dist. LEXIS 109789 at * 4 (S.D. Fla. June 22, 2020)("Nothing in the 2004 Instrument makes it dependent on the United Kingdom's continued participation in the EU and thereby continued participation in the June 25, 2003 Agreement on Mutual Legal Assistance with the European Union"). Indeed, as McGrath concedes, the U.S. - E.U. Extradition Agreement is still in effect between the United States and the EU member states; the agreement itself has not been "terminated." Thus, a plain reading of the 2004 Instrument does not support McGrath's claim that the termination clause has been triggered by Brexit. *See Abbott v. Abbott*, 560 U.S. 1, 10 (2010)('The interpretation of a treaty, like the interpretation of a statute, begins with its text."); *Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 457 (2d Cir. 2003)("Where the language of . . . [a] . . . treaty is plain, a court must refrain from amending it because to do so would be to make, not construe, a treaty.")

Notably, the Government has submitted a declaration of Tom Heinemann, Attorney Adviser in the Office of Law Enforcement and Intelligence for the U.S. Department of State, which indicates that the State Department interprets these treaty documents the same way and confirms that the State Department's view that the Instrument – including its provisions relating to the authentication of extradition documentation – "remains in force." [Dkt. 32-2, p. 11.] "The Executive Branch's interpretation of a treaty is entitled to great weight[,]" *Lozano v. Montoya Alvarez*, 697 F.3d 41, 50 (2d Cir. 2012), and courts "typically defer[] to the executive branch's determination" as to whether a treaty has lapsed or remains in force. *In Re Extradition of Sacirbegovic*, 2005 U.S. Dist. LEXIS 707 at * 29 (S.D.N.Y. Jan. 19, 2005).

Finally, two district courts in Florida have analyzed the interplay between Brexit and the Instrument in similar circumstances and have concluded the Instrument remains in effect. *See In Re Benjamin,* 2021 U.S. Dist. LEXIS 193555 (S.D. Fla. Oct. 7, 2021); *Flynn v. Barr*, 2020 U.S. Dist. LEXIS 109789 (S.D. Fla. June 22, 2020). McGrath's challenge to the manner in which the United Kingdom has authenticated Exhibit 2 is denied.

### B. Probable Cause

McGrath's challenge to the Government's probable cause showing is more straightforward. In essence, McGrath argues that the police officers who identified McGrath as one of Officer Moore's assailants had a limited opportunity to observe Moore's attacker, and that Moore's post-attack identification of McGrath was tainted by a suggestive and discredited in-court "dock identification" procedure. I agree with the Government that McGrath seeks to hold the Government's proof to an inappropriate standard in this context.

As set forth above, this extradition proceeding does not require the Court to determine whether McGrath is guilty or innocent. The issue is probable cause, a common sense standard which does not take into account questions of admissibility or compliance with identification standards which come into play at trial. The officer identifications here are amply sufficient to establish probable cause in an extradition hearing.

Moreover, the identifications about which McGrath complains are well-corroborated by other evidence, including the interlocking and self-incriminating statements given by co-defendants Swithenbank (Rory "booted the cop") and Lunn (McGrath "was the worst" in the fight). This evidence, ignored in McGrath's submission, puts to rest any concern that McGrath is a victim of misidentification.

8

In sum, I readily find the Government's evidence sufficient to establish probable cause for McGrath's extradition.

**C. Bail**

McGrath is a 62 year old naturalized U.S. Citizen (dual citizenship with Ireland) who has resided in the New York City metropolitan area since 1986. He owns a home in Pearl River, New York, where he lives with his wife and two teenage children. He is a retired construction worker who also owns commercial property which he maintains and from which he derives income. He suffers from an array of respiratory ailments and other medical conditions. Based on this profile, the Pretrial Services Agency recommended McGrath's release on bond following his arrest on May 14, 2021.

When McGrath was presented before the Court on May 14, his counsel argued that a combination of factors amounted to "special circumstances" warranting McGrath's release notwithstanding the "presumption against bail in extradition cases[.]" *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986). In addition to the personal characteristics highlighted by Pretrial Services, counsel proffered the fact that McGrath had served as a volunteer at Ground Zero after the September 11 attacks, and that his respiratory conditions were linked to that service. Counsel also pointed to the limited penalties (five year maximum sentence) to which McGrath would be exposed if convicted in the United Kingdom, and to the fact that bail would generally be available in connection with similar assault charges in the United States. Finally, counsel also stressed the ongoing Covid-19 Pandemic, noting that McGrath's respiratory problems would expose him to an enhanced risk of infection if confined in a congregate setting.

The Court found a combination of special circumstances to exist and ordered McGrath

released on bail.  Cognizant of the limited applicability of bail in international extradition cases, the Court imposed stringent bail conditions, including but not limited to:

- A $1 million personal recognizance bond, cosigned by 4 financially responsible persons and secured by $250,000 in cash or property

- Home incarceration enforced by GPS monitoring

- Surrender of passports

- Travel restrictions

- Pretrial Services supervision

It is undisputed that McGrath has fully complied with these conditions, including home incarceration, since his May 14, 2021 release.[4]

The Government now seeks McGrath's remand in connection with this Court's certification of his extraditability.  Notably, the Government does not assert that McGrath poses any risk of flight or any danger to the community, nor does the Government suggest that the bail conditions imposed by the Court are insufficient to secure the Government's ability to surrender McGrath to United Kingdom authorities.  Instead, the Government argues only that remand is mandatory under 18 U.S.C. § 3184 after a certification of extraditability. [Dkt.32, pp. 8 *et seq.*] I disagree.

"It is well-settled that although there is a presumption against granting bail in an international extradition case, an extraditee may be granted bail – both before and after certification of extraditability – upon a showing of special circumstances." *In Re Kapoor*, 2012

---

[4] On July 23, 2021, and again on August 31, 2021, each time on consent of the Government, the Court modified the conditions of McGrath's home incarceration to allow him to perform maintenance on his commercial properties. [Dkts. 15, 19.]

U.S. Dist. LEXIS 87184 at *10-11 (E.D.N.Y. June 22, 2012)(collecting cases).  As Judge Levy explained in *Kapoor*, the "special circumstances" standard for bail in extradition cases is derived from *Wright v. Henkel*, 190 U.S. 40 (1903), wherein the Supreme Court observed that courts possess authority to grant bail in such cases even though there is no specific statutory authority for doing so.  2021 U.S. Dist. Lexis 87174 at *5-6.  Importantly, "*Wright* drew no analytical distinction between pre- and post-certification bail applications[.]" *Id.* at *8, quoting Garcia v. Benov*, 2009 U.S. Dist. LEXIS 75455 at *5 n.23 (C.D. Cal. April 13, 2009.)  Applying this reasoning, district courts in this Circuit and elsewhere continue to fix bail as appropriate in post-certification extradition cases where special circumstances apply.  *See, e.g., In Re Extradition of Mirela,* 2018 U.S. Dist. LEXIS 58056 (D. Conn. April 5, 2018): *In Re Extradition of Manrique*, 2021 U. S. Dist. LEXIS 209440 (N. D. Ca. Oct. 29, 2021).

Although the Government argues that "no appellate court has specifically addressed the [government's] argument that the statute's language mandates remand" [Dkt. 32, p. 8], I note that the Second Circuit specifically upheld a district court's grant of bail in a post-certification extradition case, notwithstanding the language of § 3184, in *Hu Yau-Leung v. Soscia*, 649 F.2d 914 (2d Cir. 1981.)  The Court of Appeals cited *Wright v. Henkel*, stated the "proper standard in determining whether to grant bail" in this posture is "special circumstances," and affirmed the grant of bail because the district court "correctly applied that standard."  694 F.2d 920.

Turning to the instant case, I find that the special circumstances which supported McGrath's release at the time of his provisional release in May also support his continued release at this time.  McGrath is a U.S, citizen, a 62 year old homeowner who resides with his family and has lived in the community since 1986.  *See In re Extradition of Sacirbegovic*, 2004 U.S. Dist.

LEXIS 12353 at *7 (S.D.N.Y. July 2, 2004)(US citizenship a factor supporting special circumstances).  He faces limited penalties if convicted in the United Kingdom and would certainly be eligible for bail if charged with similar offenses in the United States. *See In re Extradition of Sacirbegovic*, *id*., at *6-7 (eligibility for bail if charged with similar offense in US as special circumstance).  He has significant health problems, some of which relate back to his service as a volunteer at the World Trade Center disaster site, including respiratory conditions which pose an enhanced risk of complications if he acquires a Covid-19 infection.[5]  *See In Re Extradition of Manrique*, *supra,* 2021 U. S. Dist. LEXIS 209440 at *9-10 (vulnerability to breakthrough Covid-19 infections in jail a factor giving rise to special circumstances).

Further, McGrath's flawless compliance with strict bail conditions – including home incarceration – over a seven month period reinforces the Court's original assessment. *See In Re Extradition of Mirela, supra,* 2018 U.S. Dist. LEXIS 58056 at * 3-4 ("admirable compliance" with pre-certification bond supports post-certification special circumstances); *In Re Kapoor*, *supra*, 2012 U.S. Dist. LEXIS 87184 at *11 (post-certification releasee "complied with her conditions of release for the past year and thus poses no evident risk of flight.")  On this record, there is no real argument that McGrath poses a risk of flight or a danger to the community, and I

---

[5]Defense counsel proceeded by proffer at the May 2021 bail hearing.  Counsel has now submitted extensive documentation supporting counsel's representation that McGrath suffers from respiratory and other ailments related to World Trade Center Toxic Exposures. [Dkts. 34, 36 generally; Dkt. 36-3 specifically.]

Counsel has also submitted correspondence on McGrath's behalf from co-workers at the World Trade Center site, and from a state legislator, demonstrating community support.  [Dkt. 29, Ex. 2-4.]  *See In Re Extradition of Mirela, supra,* 2018 U.S. Dist. LEXIS 58056 at *4 (citing "high regard in which [extraditee] is held by individuals . . . in her community" as special circumstance).

find that the present bail conditions are "reasonably calculated to ensure that he remains in this country while these proceedings are underway and is available for extradition should that be the ultimate outcome." *In re Extradition of Sacirbegovic*, *supra,* 2004 U.S. Dist. LEXIS 12353 at *7-8.

Accordingly, the Government's application to remand McGrath is **DENIED**. McGrath shall remain at liberty on the conditions previously set. The Government may apply for a remand order when and if the Secretary of State determines that McGrath should be surrendered to the United Kingdom.

## IV.  CONCLUSION

For the foregoing reasons, the Court certifies that the evidence submitted is sufficient to sustain the charges against McGrath, consistent with the applicable treaty.

The United States Attorney's Office for the Southern District of New York is directed to forward a copy of this Certification and Order, together with a copy of the transcript of the October 21, 2021 hearing and the exhibits received in evidence, to the Secretary of State.

Dated: December 15, 2021
       White Plains, New York

SO ORDERED

_____
Paul E. Davison, U.S.M.J.